AIR EVAC EMS, INC., d/b/a    )
AIR EVAC LIFETEAM,    )
    )
    Plaintiffs,    )
    )    Case No. 3:06-0239
v.    )    Judge Trauger
    )
KENNETH D. ROBINSON, M.D.,    )
COMMISSIONER OF HEALTH    )
AND TENNESSEE BOARD OF    )
EMERGENCY MEDICAL SERVICES,    )
    )
    Defendants.    )

## MEMORANDUM

Pending before the court is the Plaintiff's Motion for Reconsideration of Court's Denial, in Part, of Plaintiff's Motion for Leave to File Amended Complaint (Docket No. 19), to which the defendants have responded (Docket No. 24). For the reasons discussed herein, the plaintiff's motion will be denied.

## FACTS and PROCEDURAL HISTORY

The plaintiff provides air ambulance services from bases located throughout Tennessee. (*See* Docket No. 1 ¶ 6.) On March 17, 2005, the Tennessee Board of Emergency Medical Services ("Board") notified the plaintiff that certain of its helicopters had been deemed by Board staff to be in violation of Tennessee Emergency Medical Services rules 1200-12-1-.05(2)(c)(2), (3), and (4), which require helicopters licensed in this state to have on board certain equipment.

1

(*See id.* ¶ 8.)

The plaintiff, which operates pursuant to an air carrier operating certificate issued by the Federal Aviation Administration ("FAA"), challenged the rules before the Board, which determined that they were valid and not preempted by federal law. (*See id.* ¶¶ 13, 16.) The plaintiff then sought in this court both "a declaration that the [Board] has no power to issue rules concerning aircraft safety" and "the enjoining of the enforcement against the Plaintiff of certain aircraft equipment rules promulgated by the State of Tennessee." (*See id.* ¶ 1.)

On August 1, 2006, the plaintiff sought leave to amend its Complaint in a number of ways. (*See* Docket No. 12.) The court granted this motion in part but denied the plaintiff's attempt to expand its preemption challenge to include a claim that federal law preempts the defendants' "aircraft crew safety and training" regulations. (*See* Docket No. 15 at 3.) In so denying, the court determined that such issues "simply [are] not ripe for inclusion in this case." (*See id.*) More specifically, it found that "there is no factual basis whatsoever . . . that justifies the expansion of claims in this case into this new area." (*See id.*)

The plaintiff now moves the court to reconsider this decision. (*See* Docket No. 20.)

## ARGUMENT

### I.      The plaintiff has not demonstrated any of the factors that would justify a reconsideration of the court's previous finding.

The Court of Appeals for the Sixth Circuit has observed that the "Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders" but has provided that "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and reopen any part of a case before entry of final judgment."

2

*Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 Fed. App'x at 959 (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

The plaintiff does not assert any intervening change of controlling law, nor does it point to newly available evidence that is somehow material to its motion. Accordingly, in determining whether to reconsider its earlier decision, the court must consider only whether there exists "a need to correct a clear error or prevent manifest injustice." *See Rodriguez*, 89 Fed. App'x at 959.

While the plaintiff does not fit its arguments in support of its Motion for Reconsideration within the framework of the standards that govern such motions, it does argue that its challenge to the defendants' safety and training requirements presents "a viable case[]or[]controversy" that is suitable for review by this court. (*See* Docket No. 20 at 2.) In response, the defendants assert that grounds for reconsideration do not exist here because the plaintiff has "fail[ed] to establish that its proposed complaint amendments are constitutionally justiciable." (*See* Docket No. 24 at 3.)

Because, as indicated in the court's August 24, 2006 memorandum, the plaintiff's proposed challenge to the defendants' regulation is, indeed, not ripe for review, the court committed no clear error in making such a determination, nor did any "manifest injustice" occur as a result. (*See* Docket No. 15 at 3.)

**II.    The plaintiff's challenge to the defendants' safety and training requirements is not ripe for review.**

The ripeness requirement exists, in part, in order to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *see Peoples Rights Org. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). As recognized by the Sixth Circuit, the Supreme Court has found that the analysis of whether a case is ripe for review is best conducted "in a twofold aspect, requiring the Court 'to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *See Nat'l Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 285 (6th Cir. 1997) (quoting *Abbott Labs.*, 387 U.S. at 149). The court will address each of these two factors in turn. *See Poe v. Ullman*, 367 U.S. 497, 507-09 (1961) (implying that a plaintiff must demonstrate both factors in order to establish ripeness).

### A. The parties will not suffer hardship if the plaintiff's challenge is not heard.

In applying this factor, the court must determine whether the parties in this case will suffer significant hardship if the plaintiff's pre-enforcement challenge to the defendants' safety and training regulations is not heard. The more speculative this hardship, the less likely it is that review will be granted. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (finding that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotation omitted).

Here, the plaintiff argues that it will suffer hardship in the form of economic damages. Specifically, it claims that it is suffering and will continue to suffer "economic injury from the increased cost of compliance imposed on [it] by the regulations [it has] challenged." (Docket No. 20 at 12.) The plaintiff alleges that the heightened standards required by the Board

4

"diminish[] the pool of available pilots, increasing the cost of operation of Plaintiff . . . and invading Plaintiff's right to operate under the Part 135 certificate issued to it by the FAA." (*Id.* at 4-5.)

A plaintiff who demonstrates that a regulation has an immediate impact on its day-to-day business operations and "requir[es] substantial monetary investment in order to comply" has met the demands of the hardship requirement, even prior to the regulation's enforcement. *See Magaw*, 132 F.3d at 286; *see also Abbott Labs.*, 387 U.S. at 152-53. In both *Magaw* and *Abbott Labs*, plaintiffs faced regulations that had a "direct and immediate" impact on them. *See Magaw*, 132 F.3d at 286. In *Magaw*, the Sixth Circuit found that the hardship factor weighed in favor of firearms manufacturers and dealers that were the targets of legislation that, among other things, prohibited the manufacture, transfer, or possession of certain types of weapons. *See id.* at 277, 286. That court found that such regulations forced the plaintiffs to either terminate a line of business, make substantial expenditures in order to comply with the new rules, or willfully violate the statute and risk serious criminal penalties. *See id.* at 287.

Such was also the case in *Abbott Labs*. There, a number of pharmaceutical companies were forced to either change all labels and promotional materials for certain drugs or refuse to abide by newly enacted regulations, thereby exposing themselves to significant criminal and civil penalties. *See Abbott Labs*, 287 U.S. 152-53. Based on these facts, the Supreme Court determined that the promulgation of these regulations "puts petitioners in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate." *See id.* at 152.

The same is not true for the case at hand. Like the plaintiffs in *Magaw* and *Abbott*, the plaintiff here claims that the defendants' regulations have negatively impacted it, despite the fact

that the regulations have not yet been enforced against it. (*See* Docket No. 20 at 12.) Unlike the other plaintiffs, however, it has not demonstrated that this alleged impact is significant. It speaks in generalities about the diminished pool of available pilots and its increased operating costs, but it fails to explain how the defendants' requirements have forced it to make a choice between significant economic expenditures or serious penalties. As such, any hardship it may face is too speculative to warrant immediate adjudication. *Cf. Ohio Forestry Ass'n., Inc. v. Sierra Club*, 523 U.S. 726, 734 (6th Cir. 1998) (holding that a challenge to a forestry management plan was not ripe in part because the plaintiff had not shown how the plan would "force it to modify its behavior in order to avoid future adverse consequences, as, for example, agency regulations can sometimes force compliance through fear of future sanctions").

### B. The issues in this case are not fit for a judicial decision.

This factor requires the court to determine whether the issues and record in this case are fit for judicial review. An issue is more likely to exhibit such fitness when it is a purely legal one, the analysis of which does not depend on a particular factual context. *See Abbott Labs*, 287 U.S. at 149; *Magaw*, 132 F.3d at 290; *see also Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 581 (finding an issue to be fit for review where it was "purely legal, and [would] not be clarified by further factual development"). Like the hardship factor discussed above, the fitness analysis weighs against the plaintiff.

The plaintiff complains generally that the defendant has promulgated "aircraft crew safety and training regulations" that are preempted by federal legislation. (*See* Docket No. 20 at 5.) Other than noting that some of these regulations require "certain levels of flight time and

6

training"and involve "the imposition of a 3000[-]hour experience requirement and additional check ride requirement for [Helicopter Emergency Medical Services] pilots," the plaintiff provides the court with no direction as to which regulations it seeks to address.  (*See id.* at 4, 12.) Without a more developed factual record, the court cannot discern from the twelve-page compilation the plaintiff has provided which of the rules it would hope to strike down.  (*See* Docket No. 16-2.)

In addition, even the plaintiff admits that the defendants have not tried to enforce any safety or training regulations against it.  (*See id.* at 2.)  In fact, it has no definitive proof that the defendants would stand by these rules in the face of a challenge.  (*See id.* at 16 (stating only that the defendants "will *presumably* adhere to this policy should plaintiff return to the EMS Board in another declaratory action") (emphasis added).)  As such, the court finds this challenge to be too vague and uncertain to warrant its consideration at this time.

Accordingly, neither a clear error nor a need to prevent manifest injustice requires the court's reconsideration of its earlier finding that the plaintiff's challenge to the defendants' "aircraft crew safety and training" regulations "simply is not ripe for inclusion in this case."  *See Rodriguez*, 89 Fed. App'x at 959; (Docket No. 15 at 3).

## CONCLUSION

Because the plaintiff has not demonstrated any of the factors that would justify a reconsideration of the court's previous finding, its Motion for Reconsideration of Court's Denial, in Part, of Plaintiff's Motion for Leave to File Amended Complaint (Docket No. 19) will be denied.

7

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

8