UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AIR EVAC EMS, INC., d/b/a ) | |
| AIR EVAC LIFETEAM, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 3:06-0239 |
| v. ) | Judge Trauger |
| ) | |
| KENNETH D. ROBINSON, M.D., ) | |
| COMMISSIONER OF HEALTH ) | |
| AND TENNESSEE BOARD OF ) | |
| EMERGENCY MEDICAL SERVICES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is Defendants' Motion to Dismiss or for Summary Judgment (Docket No. 30), to which the plaintiff has responded (Docket No. 47). Also pending is the Plaintiff's Motion for Summary Judgment (Docket No. 34), to which the defendants have responded (Docket No. 44), and the plaintiff has replied (Docket No. 49). The United States has filed a Statement of Interest (Docket No. 41). For the reasons discussed herein, the defendants' motion will be denied and the plaintiff's motion will be granted.

## FACTS and PROCEDURAL HISTORY

The plaintiff provides air ambulance services from bases located throughout Tennessee. (*See* Docket No. 1 ¶ 6.) On March 17, 2005, the Tennessee Board of Emergency Medical Services ("Board") notified the plaintiff that certain of its helicopters had been deemed by Board staff to be in violation of Tennessee Emergency Medical Services rules 1200-12-1-.05(2)(c)(2),

(3), and (4), which require helicopters licensed in this state to have on board certain equipment. (*See id.* ¶ 8.)

The plaintiff, which operates pursuant to an air carrier operating certificate issued by the Federal Aviation Administration ("FAA"), challenged the rules before the Board, which determined, at the conclusion of a hearing held on November 30, 2005, that the rules were valid and not preempted by federal law. (*See id.* ¶¶ 13, 16.) On March 28, 2006, the plaintiff filed a Complaint in this court seeking both "a declaration that the [Board] has no power to issue rules concerning aircraft safety" and "the enjoining of the enforcement against the Plaintiff of certain aircraft equipment rules promulgated by the State of Tennessee." (*See id.* ¶ 1.) Two days later, on March 30, 2006, the Board filed its final order with the Administrative Procedures Division of the Office of the Tennessee Secretary of State. (*See* Docket No. 45 ¶ 19.)

On August 1, 2006, the plaintiff sought leave to amend its Complaint in a number of ways. (*See* Docket No. 12.) The court granted this motion in part but denied the plaintiff's attempt to expand its preemption challenge to include a claim that federal law preempts the defendants' "aircraft crew safety and training" regulations. (*See* Docket No. 15 at 3.) On October 23, 2006, the court denied the plaintiff's Motion for Reconsideration of this denial. (*See* Docket No. 27 at 1.)

The plaintiff alleges that federal law preempts the Board's rules at issue here. (*See* Docket No. 35 at 1.) The defendants disagree. (*See* Docket No. 44 at 2.) Both parties have now moved for summary judgment on these preemption claims. (*See* Docket No. 30; Docket No. 34.) In addition, the defendants have moved to dismiss the plaintiff's claims based on the abstention principles set forth in *Younger v. Harris*, 401 U.S. 37, 40-41 (1971). The court first will address

2

the defendants' abstention arguments.

I.     **Because abstention is not warranted in this case, the defendants' motion to dismiss the plaintiff's claims on abstention grounds will be denied.**

The defendants maintain that, because the plaintiff filed suit in this court two days before the Board officially entered its decision denying the plaintiff's petition for a declaratory order, this court should abstain from judgment on the plaintiff's claims under the principles set forth in *Younger v. Harris* and should dismiss the plaintiffs' case altogether. (*See* Docket No. 31 at 5); *Younger*, 401 U.S. at 40-41.  The plaintiff maintains that abstention is not proper in this case for two reasons: (1) because "the issues in this case present a facially conclusive claim of preemption"; and (2) because "considerations of comity prevent the invocation of abstention in this matter."[1]  (*See* Docket No. 47 at 1, 5.)

---

[1] The plaintiff also argues against the application of *Buford* abstention.  (*See* Docket No. 47 at 11 (citing *Buford v. Sun Oil Co.*, 319 U.S. 315 (1943) and noting that the defendants referenced a case about *Buford* abstention in one of their citations).  The defendants, however, merely referenced a case about *Buford* abstention in the context of their arguments about why *Younger* abstention should apply in this case.  (*See* Docket No. 31 at 8 (citing a case about *Buford* abstention as support for the defendants' assertion that courts should dismiss, rather than stay, cases in which abstention is proper).)  The defendants never argued in their pleadings or at oral argument that *Buford* abstention was appropriate in this case.  (*See generally* Docket No. 31; Docket No. 56.)  As such, the court need not engage in a lengthy analysis of the propriety of *Buford* abstention here.

The plaintiff has outlined the basis for its arguments that *Buford* abstention is inappropriate in this case, and the court finds such arguments to be of sound legal basis.  (*See* Docket No. 47 at 11 (citing *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 362 (1989) ("NOPSI") (indicating that *Buford* abstention is not proper where the primary claim is that federal law preempts local action))); *see also* Erwin Chemerinsky, Federal Jurisdiction § 12.2 (4th ed. 2003) (noting that "*Buford* abstention requires that the administrative system have a primary purpose of achieving uniformity within a state and that there be a danger that judicial review would disrupt the proceedings and undermine the desired uniformity").  Thus, to the extent that the defendants intended to argue for *Buford* abstention, the court rejects such an attempt.

3

Although this case does not present facially conclusive claims of preemption, *Younger* abstention is not appropriate here.

### A. This case does not present facially conclusive claims of preemption.

The Sixth Circuit has recognized the power of federal courts to rule on cases in which abstention may otherwise be proper when those cases present facially conclusive claims of preemption. *See GTE Mobilenet of Ohio v. Johnson*, 111 F.3d 469, 475 (6th Cir. 1997) (holding that abstention is not required where "the naked question, uncomplicated by ambiguous language, is whether the state law on its face is preempted"). A facially conclusive claim of this sort exists where a court can resolve a preemption dispute without interpreting state law or making factual findings. *See Bunning v. Kentucky*, 42 F.3d 1008, 1011 (6th Cir. 1994); *see also Norfolk & Western Ry. Co. v. Pub. Utils. Comm'n of Ohio*, 926 F.2d 567, 573 (6th Cir. 1991) (internal quotation omitted). As the Sixth Circuit explained in *GTE*, a court tasked with making this kind of determination about a federal statute should look to the "provisions of the whole law, and to its object and policy" and decide whether the statute, on its face, presents a "facially conclusive" claim that the federal law preempts state action. *See GTE*, 111 F.3d at 479-80.

Here, the plaintiff maintains that it has demonstrated a facially conclusive claim of preemption because (1) no factual issues exist as to whether the plaintiff has violated the Board's rules (it has); and (2) the court need not engage in a detailed analysis of state law in order to decide the preemption issues presented here. (*See* Docket No. 47 at 3.) While the plaintiff correctly attempts to fit its arguments about facially conclusive claims within the *Bunning* framework, these arguments lack an important element. The plaintiff never explains how the

4

federal statute and regulations at issue here–specifically, the Federal Aviation Act, 49 U.S.C. § 40101 (2000) ("Act") and the regulations promulgated thereunder–on their face present facially conclusive claims of preemption. In every relevant case cited by the plaintiff, as well as all of those discovered during the court's research, courts found facially conclusive claims of preemption only where the statute itself limited state interference.

For instance, in *GTE*, the Sixth Circuit found no facially conclusive claims of preemption in a case where cellular telephone providers sought injunctive relief from administrative action because the plain language of the federal statutory section in question did not reflect "Congress's clear intent to preempt the states' authority" to regulate commercial cellular telephone rates. *See GTE*, 111 F.3d at 480. The court specifically contrasted that case with two other Sixth Circuit cases that involved statutes that, on their face, expressly preempted state action. *See id.* at 476 (citing *Bunning*, 42 F.3d at 1009-12 (involving an "express preemption clause which states that the provisions of [the federal statute] supersede and preempt any provision of state law . . ."); and *Norfolk*, 926 F.2d at 569-70 ("The Act includes a broad preemption provision excluding the states from legislating in any area already 'covered' by the regulations adopted by the secretary.")); *see also Cmty. Treatment Ctrs., Inc. v. City of Westland*, 970 F. Supp. 1197, 1124 (E.D. Mich. 1997) (finding no facially conclusive claims of preemption where a federal statute and its accompanying regulations "on their face [were] silent" about whether they preempted local action).

The plaintiff points to no statutory provision or regulation that, on its face, preempts state action. Without facially conclusive statutory language, the court cannot determine whether the federal enactments in this case preempt the state ones unless it engages in a deeper analysis of

5

legal and factual issues, which the Sixth Circuit cautioned against in *Bunning*. *See Bunning*, 42 F.3d at 1011 (noting that facially conclusive claims of preemption exist "where resolution of the dispute does not require the court to interpret state law or make factual findings"). Accordingly, like in *GTE* and *Community Treatment Centers*, facially conclusive claims of preemption do not exist here.

This finding does not end the court's abstention analysis. Rather, the court now must determine whether abstention is appropriate under the principles set forth in *Younger v. Harris*. *See GTE*, 111 F.3d at 480 (indicating that a court may consider whether *Younger* abstention is appropriate after it has determined that facially conclusive claims of preemption do not render abstention improper).

### B. *Younger* abstention is not appropriate in this case.

The "virtually unflagging obligation of the federal forum to exercise its jurisdictional powers may be abdicated out of deference to parallel litigation in the state forum in only the most exceptional circumstances." *See United States v. Anderson County, Tenn.*, 705 F.2d 184, 186 (6th Cir. 1983). Such circumstances exist when the abstention requirements laid out in *Younger v. Harris* are met. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 359 (1989) ("NOPSI").

The Sixth Circuit has held that abstention pursuant to *Younger* is appropriate only when a court can answer the following three questions in the affirmative: (1) do the relevant state proceedings "constitute an ongoing state judicial proceeding"; (2) do the proceedings "implicate important state interests"; and (3) is there "an adequate opportunity in the state proceedings to

6

raise constitutional challenges." *Norfolk*, 926 F.2d at 572 (quoting *CSXT, Inc. v. Pitz*, 883 F.2d 468, 474 (6th Cir.1989)); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). It has also noted that "the application of the *Younger* rule is much more than the mechanical application of these considerations." *See Zalman v. Armstrong*, 802 F.2d 199, 201-02 (6th Cir. 1986) (reminding courts to be sensitive to the "concerns which animate [the *Younger*] rule, *e.g.,* equity, comity and federalism).

> 1. *Although the state proceeding was "judicial," whether it is "ongoing" remains unclear.*

The first prerequisite of *Younger* abstention is that the state proceeding must be both ongoing and judicial in nature. *See NOPSI*, 491 U.S. at 369-70. When no state proceeding is pending, "considerations of equity, comity, and federalism are therefore diminished" and a federal court may consider constitutional challenges to state enactments and grant declaratory and injunctive relief. *Norfolk*, 926 F.2d at 572 (quoting *WXYZ, Inc. v. Hand*, 658 F.2d 420, 423 (6th Cir. 1981)).

Whether an administrative proceeding will be characterized as "judicial" or "legislative" depends on "the nature of the final act which it is designed to produce." *GTE*, 111 F.3d at 481 (internal citations omitted); *see also NOPSI*, 491 U.S. at 371. The Supreme Court noted in *NOPSI* that "[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end." *NOPSI*, 491 U.S. at 370. The defendants maintain–and the plaintiff does not dispute–that the state level proceeding in this case qualifies as "judicial." (*See* Docket No. 31 at 5-6 (citing a number of Sixth Circuit decisions that found administrative hearings to be judicial in nature).) The court agrees.

7

A more difficult decision arises when considering whether the plaintiff's proceeding before the Board was "ongoing."[2] The plaintiff notes, and the defendants acknowledge, that the Board had actually decided that its rules were valid and not preempted by the FAA or its accompanying regulations at the conclusion of its November 30, 2005 hearing. (*See* Docket No. 45 ¶ 16.) The defendants, however, have correctly indicated that the Board's decision was not technically considered "final" until the Board entered its final order on March 30, 2006. (*See* Docket No. 31 at 6 (citing Tenn. Code Ann. §4-5-318(a)-(b) (2005) ("an initial or final order shall become effective upon entry of the initial or final order")).) Even so, the court is mindful of the Sixth Circuit's caution in *Zalman* that *Younger* is not to be mechanically applied. *See Zalman*, 802 F.2d at 202. The court need not arrive at a final decision as to whether the administrative proceedings were "ongoing" in this case because, as discussed below, it has determined that *Younger* abstention is otherwise inappropriate here.

### 2. *The state proceedings do not implicate important state interests.*

The second *Younger* prerequisite requires a court to consider the "substantiality of a State's interest in its proceedings" by looking "not narrowly . . . to its interest in the *outcome* of a particular case . . . but to the importance of the generic proceedings to the State." *See GTE*, 111 F.3d at 482 (quoting *NOPSI*, 491 U.S. at 365); *see also Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986) (indicating that "federal courts must have

---

[2] It is not clear from the record how an aggrieved party may properly appeal a final decision by the Board. The court notes, however, that when an administrative hearing is completed and "no further administrative proceedings [are] contemplated [n]or appeals available . . . short of judicial review," the administrative process is considered to be no longer ongoing. *See Norfolk*, 926 F.2d at 572 (finding no "ongoing" or "pending" state proceeding where a party filed suit in district court rather that pursuing further administrate appeals).

8

"concern for comity and federalism" in "civil proceedings in which important state interests are involved"). The appropriate inquiry in this case, therefore, is not whether Tennessee has an interest in the plaintiff's conduct, standing alone, but rather whether it has a substantial, legitimate interest in regulating the avionics equipment aboard air ambulances operating, at times, within its borders. *See GTE*, 111 F.3d at 482.

Without elaborating further, the defendants claim that an important state interest exists here because "[t]he declaratory proceeding . . . implicates important health and safety concerns." (*See* Docket No. 31 at 7; *see also* Docket No. 49 at 6 (indicating the plaintiff's arguments that "Defendants cite no legal authority to support their assertion that the regulation of avionics equipment is within the 'historic police powers of the state'").) In response, the plaintiff argues that, as evidenced by the fact that the Tennessee General Assembly allows, but does not require, the Board to issue standards for air ambulance services and prohibits the Board from requiring permits for individual aircraft, "Tennessee does not have[] as one of its 'paramount interests' the regulation of the avionics of aircraft." (*See* Docket No. 47 at 7.)

The Supreme Court has found that the regulation of utilities, the elimination of "prohibited sex discrimination," and the governance of the professional conduct of attorneys all qualify as important state interests. *See NOPSI,* 491 U.S. at 365; *Dayton Christian Schs.*, 477 U.S. at 628; *Middlesex County Ethics Comm.*, 457 U.S. at 434. Similarly, the Sixth Circuit "has applied *Younger* to such important state interests as the regulation of doctors, insurance companies, dentists, electric utilities, and [waste disposal on] railroads," as well as to the regulation of intrastate trucking. *See Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 738 F. Supp. 1140, 1145 (M.D. Tenn. 1990) (internal citation omitted).

9

In contrast, the Sixth Circuit found that no important state interest existed in a case where Tennessee sought a state forum to adjudicate the validity of a tax assessment that was alleged to violate the Supremacy Clause. *See Anderson County*, 705 F.2d at 189; *see also Gen. Am. Transp. Corp. v. Limbach*, No. C-2-85-1603, 1987 WL 288146, at *5 (N.D. Ohio 1987) (finding that a state's interest in adjudicating the validity of a state action alleged to be in violation of a federal law is "at best concurrent with and at worst totally subservient to the coexisting interest" of a party seeking to obtain a federal adjudication of the propriety of the state action). *But see CSXT*, 883 F.2d at 475 (noting that a state's interest in upholding a state enactment is not negated by the fact that the state enactment might be preempted by federal law).

Here the defendants have not provided–nor has the court's research discovered–any decision indicating that the regulation of avionics equipment qualifies as an "important state interest." (*See* Docket No. 31 at 7.) The court finds the regulation of this equipment to be distinguishable from other interests labeled as "important" by the Supreme Court and the Sixth Circuit.

For instance, it does not involve the upholding of a responsibility long delegated to states and often enshrined in their laws and constitutions, *e.g.*, the regulation of attorney conduct. *See Middlesex County Ethics Comm.*, 457 U.S. at 434 (indicating that "states traditionally have exercised extensive control over the professional conduct of attorneys" and noting that a constitutional provision of the state in this case vested such authority with the state supreme court). Rather, Tennessee law seems not even to require the Board to regulate avionics equipment on air ambulances and, in fact, may expressly prohibit the Board from doing so. *See* Tenn. Code Ann. §§ 68-140-507(a) ("Permits shall not be required for individual aircraft."), 68-

10

140-502(20) ("Permit means an authorization issued for an ambulance vehicle as meeting the standards adopted pursuant to this part.").

In addition, the regulation of avionics equipment on the air ambulances at issue in this case does not affect only activities that take place solely within Tennessee's borders, as do a number of other state interests recognized as "important" by the Supreme Court and the Sixth Circuit, *e.g.*, the regulation of utilities and the certification of intrastate trucking operations. *See NOPSI*, 491 U.S. at 365 ("The regulation of utilities is one of the most important of the functions traditionally associated with the police power of the states"); *Fed. Express Corp.*, 738 F. Supp. at 1145. Rather, the plaintiff's helicopters are based in eleven states, including Tennessee, and because "[m]any of [the plaintiff's] flights to Tennessee hospitals originate from its bases in Kentucky, Mississippi and Alabama," the regulation of the avionics equipment aboard these helicopters affects a number of other states. (*See* Docket No. 45 ¶¶ 9-10.)

Finally, as demonstrated in *Anderson County*, 705 F.2d at 189, Tennessee's interest in the outcome of these proceedings may be further diminished by the fact that, as discussed below, the Board's regulations are preempted by federal law. Thus, the state interest here cannot be deemed to be "important" for the purposes of *Younger* analysis.

        3.    *The plaintiff would have an adequate opportunity at the state level to raise constitutional challenges.*

The third and final *Younger* prerequisite asks whether the plaintiff would have an adequate opportunity at the state level to raise its constitutional challenges. *See Norfolk*, 926 F.2d at 572. The plaintiff does not contest the defendants' assertion that the state proceedings here allow for such an opportunity. (*See* Docket No. 31 at 7.) Indeed, given that the plaintiff raised its preemption arguments during the proceeding before the Board, this seems to be an easy

11

conclusion.  (*See id.*); *see also* Tenn. Code Ann. § 4-5-322(h)(1) (indicating that a court reviewing an administrative decision may reverse or modify the decision if a party's rights have been violated due to administrative action that is "[i]n violation of constitutional or statutory provisions").

Thus, while the third and, arguably, the first prerequisites of *Younger* are met here, the second is not.  Viewing these prerequisites through the lens of the principles outlined in *Zalman*, *i.e.*, equity, comity and federalism, the court finds that *Younger* abstention is not appropriate in this case.  As such, it must now proceed to the merits of the parties' preemption arguments.

### II.     Because the Board's rules are preempted by federal law, the plaintiff's motion for summary judgment will be granted.

The plaintiff maintains that federal law preempts the Board's rules obligating it to install certain avionics equipment aboard its air ambulances.  (*See* Docket No. 35 at 1.)  The defendants assert that the Act does not preempt the field of "helicopter ambulance safety" and, therefore, that the Board's rules are "valid and enforceable."  (*See* Docket No. 31 at 2.)  Both parties have moved for summary judgment on these claims.  (*See* Docket No. 30; Docket No. 34.)

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

13

### A. Because Congress has preempted the field of aviation safety, the Board's rules pertaining to the plaintiff's avionics equipment are invalid.

The doctrine of federal preemption derives from the Supremacy Clause of the U.S. Constitution, which states that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution of Laws of any State to the Contrary notwithstanding." U.S. Cont. art. VI, cl. 2. Federal preemption occurs in three circumstances. First, "express" preemption exists when "Congress, in enacting a federal statute, . . . express[es] a clear intent to preempt state law." *Gustafson v. City of Lake Angelus*, 76 F.3d 778, 782 (6th Cir. 1996) (citing *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203 (1983)). Second, Congress may reveal its intent to preempt state enactments by "occupying the field" of regulation with respect to a particular topic. *See Gustafson*, 76 F.3d at 782 (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). Third, federal "conflict" preemption may implicitly exist if state law actually conflicts with federal law, *e.g.*, if "compliance with both federal and state regulations is a physical impossibility." *Gustafson*, 76 F.3d at 782 (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)).

Here, the plaintiff asserts that the Board's rules are preempted under the doctrines of both express and field preemption. (*See* Docket No. 49 at 2-3.) The United States, in its Statement of Interest ("SOI"), further argues that the rules fail due to conflict preemption. Because the court finds that Congress occupies the field of air safety regulation and, thus, preempts the Board's rules, it need not address the parties' arguments about express or conflict preemption.

Congress may implicitly indicate its intent to occupy a particular field "where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by

14

the federal law and the character of obligations imposed by it . . . reveal the same purpose.'" *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In *Greene v. B.F. Goodrich Avionics*, 409 F.3d 784, 795 (6th Cir. 2005), the Sixth Circuit, without significant discussion, expressly held that "federal law establishes the standards of care in the field of aviation safety and thus preempts the field from state regulation." In doing so, it referenced *Abdullah v. American Airlines, Inc.*, a Third Circuit decision that explained in more detail the legal bases for such a holding. *See Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 371 (3rd Cir. 1999) ("It follows from the evident intent of Congress that there be federal supervision of air safety and from the decisions in which courts have found federal preemption of discrete, safety-related matters, that federal law preempts the general field of aviation safety.").

While the defendants argue that *Abdullah* was wrongly decided, they expressly admitted in oral argument that "the Sixth Circuit pretty much adopted the Third Circuit's *Abdullah* holding" and that, by doing so, the Sixth Circuit "adopted a very, very broadly stated holding, which is that the federal government preempts the entire field of aircraft safety." (*See* Docket No. 56 at 30-31.) Not surprisingly, the plaintiff also references *Greene's* indication that "federal statutes and regulations preempt state regulation of air safety issues." (*See* Docket No. 49 at 7 (citing *Greene*, 409 F.3d at 795).)

Thus, the Sixth Circuit has provided this court with a clear directive that is acknowledged by both parties in this case.³ While the defendants argue that more deference is owed the state

---

³Notably, neither party argues that the regulations at issue here do not fall under the rubric of "air safety." Indeed, the defendants note that these regulations "implicate[] important . . . safety concerns" and, at times, refer to the field of regulation at issue here as "helicopter

15

regulations here than was given to the state law at issue in *Greene*, *Greene's* language is unmistakably broad. (*See* Docket No. 31 at 11); *see also Greene*, 409 F.3d at 794 (finding that the district court did not err when it held that "federal law preempts *any* state-law imposed duties in the realm of aviation") (emphasis added). The defendants rely on the United States District Court for the Eastern District of Michigan's recent indication, in an unreported decision, that the fact "[t]hat the Aviation Act has been found to preempt state law in one area of aviation safety does not mean it will in all cases." (*See* Docket No. 31 at 11 (citing *McMahon Helicopter Servs. v. United States*, No. 04-74133, 2006 WL 2130625, at *8 (E.D. Mich. July 28, 2006) (unpublished)).) Dicta from a district court that ultimately found that federal law preempted the field of regulation at issue before it, however, cannot override the Sixth Circuit's adoption of *Abdullah's* broad preemption rule.

Further support for the holding that federal law preempts the defendants' regulations in this case is found in what the court views to be fairly extensive FAA regulations on this topic. *See Schneidewind*, 485 U.S. at 300 (noting that field preemption "properly may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States"). As cited by the United States at oral argument, the FAA has promulgated a long list of regulations related to navigational equipment. (*See* Docket No. 56 at 37-38; *see also* Docket No. 35 at 2-4 (outlining other federal enactments and "operations specifications" pertaining to the regulation of the plaintiff's air ambulances)); 49 U.S.C. § 44701(a)(1) ("The [FAA] shall promote safe flight of civil aircraft . . . by prescribing . . . minimum standards required in the interest of safety

---

ambulance safety." (*See* Docket No. 31 at 2, 7.) Similarly, the plaintiff asserts that Congress's "broad preemption" of the field of aviation safety encompasses the regulations at issue here. (*See* Docket No. 35 at 8.)

16

for appliances and for the design, material, construction, quality of work, and performance of aircraft . . ."). The pervasiveness of these regulations, accompanied by FAA Flight Standards Service Director James Ballough's assertion that "[i]t is critical that the FAA–and only the FAA–have the responsibility for matters concerning aviation safety, including the certification and operation of aircraft" adequately refute the defendants' assertion that a letter written by Ballough in August 2006 evidences a lack of comprehensive regulation in the air ambulance safety context. (*See* Docket No. 31 at 12.) Thus, the finding that field preemption exists here is further bolstered.

Finally, while the defendants maintain that their regulations merely supplement federal enactments (*see* Docket No. 44 at 8 ("the EMS Board's decision to regulate in this manner is consistent with the accomplishment and execution of the purposes and objectives of Congress and the FAA")), such is irrelevant to a finding of field preemption, *see Pacific Gas & Electric Co.*, 461 U.S. at 212-13 ("State safety regulation is not preempted only when it conflicts with federal law."). Accordingly, because Congress has preempted the field of aviation safety, the Board's rules pertaining to the plaintiff's avionics equipment are invalid.

## CONCLUSION

Having found that abstention is not appropriate in this case, the defendants' Motion to Dismiss the plaintiff's claims on abstention grounds (Docket No. 30) will be denied. Additionally, because the court has determined that the defendants' regulations are invalid due to Congress's preemption of the field of air safety, the plaintiff's Motion for Summary Judgment (Docket No. 34) will be granted, and the defendants' Motion to Dismiss or for Summary

17

Judgment (Docket No. 30) will be denied.

      An appropriate order will enter.

                                              _____
                                              ALETA A. TRAUGER
                                              United States District Judge